# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-995V
Filed: January 25, 2024

| | |
|---|---|
| CHERI LANG,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Special Master Horner |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*
*Colleen Clemons Hartley, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

  On July 24, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.* ("Vaccine Act"). (ECF No. 1.) Petitioner alleged that she suffered from a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine she received on October 11, 2016. (*Id.*) On August 24, 2022, judgement entered awarding petitioner damages for her injury. (ECF No. 117.)

  On February 21, 2023, petitioner filed a motion seeking an award of attorneys' fees and costs. (ECF No. 121.) Petitioner seeks $124,531.06, including $105,593.90 for attorneys' fees and $18,937.16 for litigation costs. (*Id.* at 1.) The requested costs include $2,925.00 for petitioner's report by Dr. Lesley Anderson, $13,500.00 for petitioner's two reports by Dr. Uma Srikumaran, and $2,512.16 for expenses largely

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

1

associated with filing the petition and collecting medical records.  (ECF No. 121-2.)  Because petitioner was found entitled to compensation, there is no question that she is entitled to an award of reasonable attorneys' fees and costs.  42 U.S.C. §300aa-15(e); *see also* ECF No. 122, p. 2 (respondent agreeing the statutory requirements for an award of attorneys' fees and costs are satisfied).  Regarding the amount of that award, respondent requests that the special master exercise his discretion.[2]  (ECF No. 122, p. 3; ECF No. 125, p. 4.)

As respondent stressed, it is "well within the special master's discretion" to determine the reasonableness of fees.  *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520-21 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  Special masters need not engage in a line-by-line analysis of petitioners' fee application.  *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).  Instead, they may rely on their experience with the Vaccine Program to determine the reasonable hourly rate and number of hours expended.  *Wasson ex rel. Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 483-85 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests[,] . . . . Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications."  *Saxton*, 3 F.3d at 1521 (citations omitted).

I have reviewed counsel's billing records in this case and find that petitioner's request for fees is largely reasonable given the nature of the case, counsel's performance, and the specific procedural history of the case.  Additionally, my review confirms that the attorney hourly rates are consistent with what has previously been awarded to counsel.  Although the overall amount sought is unusually high for a SIRVA case, this case has had an unusually prolonged history given its factual complications, extended good faith (but ultimately unsuccessful) settlement negotiations, and full adjudication of both entitlement to compensation and damages.  However, I am concerned that the billing records reflect that this case was ultimately staffed by three

---

[2] In his initial response, respondent offered no further discussion of what considerations respondent wished to see addressed in determining the reasonableness of the award.  (ECF No. 122.)  In her reply, petitioner characterized respondent's response as non-responsive boilerplate.  (ECF No. 123.)  In a much later filed supplemental response, respondent cited a prior decision by another special master (*Aycock v. Sec'y of Health & Human Servs.*, No. 19-235V, 2023 WL 8869423 (Fed. Cl. Spec. Mstr. Nov. 8, 2023)) for the proposition that, where requested expert rates are unusually high, "the Court has closely scrutinized the number of hours spent, and the qualifications of the particular expert."  (ECF No. 125, p. 3.)  However, to the extent respondent is seeking to provide notice of a supplemental authority, the *Aycock* case cited by respondent ultimately concluded that the same expert rate billed in this case was appropriate, albeit based on evidence not included within the record of this case.  *Aycock*, 2023 WL 8869423, at *7-10.  Otherwise, if the outcome of the instant motion were different, respondent's resort to a belated sur-reply to present this issue for the first time would raise questions of fundamental fairness under the vaccine rules that would need to be addressed.  (*See* Vaccine Rule 3(b)(2); Vaccine Rule 8; Vaccine Rule 13(a)(3).)

senior level attorneys each billing $400 or more for their services.  Mr. Milmoe began billing in this case for review of the case materials in November of 2019, despite Ms. Durant already having full familiarity with the case.  (ECF No. 121-1, p. 14.)  Similarly, Mr. Amada began billing for review of the case materials in June of 2021.  (*Id.* at 24.)  While a change of primary counsel could be explainable, the billing records reflect that Ms. Durant continued to consistently bill time in the case.  Even as a relatively complicated SIRVA, this represents an unreasonable and inefficient overstaffing given the nature of the case.  Special Masters have previously disfavored having multiple attorneys working on the same case and have reduced fees accordingly.  *See, e.g.*, *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013); *Soto v. Sec'y of Health & Human Servs.*, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); *Carcamo v. Sec'y of Health & Human Servs.*, No. 07-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011).  Although counsel appears largely to have refrained from billing for internal communications and did not engage in overtly redundant staffing (*e.g.*, having multiple attorneys on a single call), there is an excessive amount of time billed for review of case materials that is likely attributable to the inefficiency inherent in having multiple attorneys working on the same case.[3]  Therefore, I reduce the attorneys' fees in this case by 5%.  This results in a reduction of attorneys' fees from $105,593.90 to $100,314.21.

Regarding the costs requested, I am concerned that petitioner's unexplained change in experts has resulted in unreasonable and redundant expert costs.  Petitioner has made no representation that her initial expert, Dr. Anderson, became unavailable, and even if petitioner had a preference for proceeding with Dr. Srikumaran, Dr. Anderson was appropriately qualified, was already familiar with the case, and by the time of the switch had already been noted to have presented a "reasonable" report with a "good argument."  (ECF No. 61, p. 1.)  Indeed, at the time petitioner filed Dr. Srikumaran's first report she had been directed to file a "supplemental" expert report.  (Non-PDF Scheduling Order, filed Apr. 27, 2020.)  Whereas Dr. Anderson was already familiar with the facts of the case, Dr. Srikumaran billed five hours reviewing the medical facts in order to produce his first report.  (ECF No. 121-2, p. 19.)  Because these hours were unreasonably redundant of Dr. Anderson's prior work, they will not be reimbursed.[4]  This reduces the requested costs from $18,937.16 to $13,937.16.

---

[3] One example:  On February 7 and 8, 2022, Ms. Durant billed 4 hours to review respondent's response to petitioner's motion for a ruling on the record, conduct responsive legal research, and review the status of the case with the client.  (ECF No. 121-1, p. 27.)  Thereafter, on February 9 and 11, 2022, Mr. Armada billed a further 7.1 hours for drafting the motion reply, but his billing also explicitly included his own "review" and "evaluat[ion]" of the case file and coordination with Ms. Durant.  (*Id.*)  Thereafter, on February 22, 2022, Ms. Durant billed 1.5 hours to re-review the file and to coordinate finalizing the motion reply with the client.  (*Id.*)

[4] "The question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so."  *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (alteration in original) (quoting *Wasson ex el. Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V,1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded in part*, 24. Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)).  Obviously, the hours at issue were necessary in the limited sense that Dr. Srikumaran needed to review the records if he was

3

Otherwise, I am satisfied that this overall reduced amount is reasonable given the experts' qualifications, the effectiveness of the ultimate work product in resolving this case, and the efficiency with which the reports were produced.

Accordingly, for the reasons discussed above, petitioner's motion is GRANTED and attorneys' fees and costs are awarded in the reduced amount of $114,251.37, which includes $100,314.21 for attorneys' fees and $13,937.16 for attorneys' costs.

**I award the total of $114,251.37 as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel Leah V. Durant, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[5]

**IT IS SO ORDERED.**

> **s/Daniel T. Horner**
> Daniel T. Horner
> Special Master

---

to opine.  Thus, the fault does not lie with Dr. Srikumaran himself but with counsel's introduction of a second expert at all.  Counsel have an obligation to monitor expert fees and costs.  *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).  For example, "[o]ne test of the 'reasonableness' of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure."  *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530, at *1 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (citing *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd in unpublished decision*, 106 Fed. Cl. 600 (2009), *aff'd*, 406 Fed. App'x 479 (2011); *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *rev'd on other grounds*, 86 Fed. Cl. 201 (2009)).  While not dispositive, that framing highlights that the subjective decision to switch experts midstream, whatever the strategic underpinning, comes with associated costs that are not necessarily reasonably chargeable to the Program.  The Federal Circuit has ruled that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Saxton*, 3 F.3d at 1521 (emphasis omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.